IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **NKECHINONYEREM EMELIKE**<br>**And ERICA BARKER,** | : | |
| **Plaintiff,** | : | |
| | : | Civil Action No. _____ |
| **vs.** | : | |
| | : | |
| **JRK RESIDENTIAL GROUP,**<br>**INC.,** | : | |
| **Defendant.** | | |

## COMPLAINT

Plaintiffs Nkechinonyerem Emelike ("Emelike") and Erica Barker ("Barker") (collectively "Plaintiffs") bring this Complaint against Defendant JRK Residential Group, Inc. ("JRK" or "Defendant") and shows the Court as follows:

## INTRODUCTION

### 1.

This is a wage and hour case. JRK operate residential apartment complexes in the Atlanta metropolitan area. It employed Emelike as a Leasing Consultant and Barker as a Leasing Manager. JRK required that Plaintiffs work off-the-clock in order to avoid the premium required by the FLSA's Maximum Hours provision.[1]

---

[1] 29 U.S.C. § 207(a)(1).

1

JRK further auto-deducted a one-hour lunch break from Plaintiffs' working hours although Plaintiffs did not take a lunch break during every work day.

2.

In addition to her federal causes of action, Emelike asserts pendent state law claims which arise out of the same set of operating facts as her federal claims. These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

**JURISDICTION AND VENUE**

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because JRK maintains its principal place of business in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**THE PARTIES**

5.

Emelike is a natural person who resides in Fulton County, Georgia.

6.

JRK employed Emelike as a Leasing Consultant at Notting Hill Luxury Apartments located at 350 Perimeter Center N., Dunwoody, Georgia ("Notting Hill") from approximately May 13, 2020 through September 15, 2020.

7.

Barker is a natural person who resides in DeKalb County, Georgia.

8.

JRK employed Barker a Leasing Manager at Notting Hill from approximately March 2020 through November 30, 2020.

9.

JRK is a foreign profit corporation organized under the laws of the State of Nevada.

10.

At all times relevant to this action, JRK has been registered to do business in Georgia.

11.

JRK is subject to the personal jurisdiction of this Court.

12.

JRK may be served through its registered agent National Registered Agents, Inc. at 289 S. Culver Street, Lawrenceville, Georgia 30046.

**ENTERPRISE COVERAGE**

13.

From March 2020 through November 30, 2020 (hereinafter "The Relevant Time Period"), JRK was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 207(a)(1).

14.

Throughout the Relevant Time Period, two or more employees of JRK handled materials used by the company for its business purposes including, but not limited to, office furniture, phones, computers, and office supplies.

15.

Throughout 2020, JRK employed two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

16.

Throughout 2020, JRK employed two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

17.

In 2020, JRK realized an annual gross volume of sales made or business done of not less than $500,000.

18.

Throughout the Relevant Time Period, JRK has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

**INDIVIDUAL COVERAGE**

19.

Throughout the Relevant Time Period, Emelike was "engaged in commerce" within the meaning of 29 U.S.C. § 207(a)(1).

20.

Throughout the Relevant Time Period, in connection with her work for JRK as a Leasing Manager, Barker was "engaged in commerce" within the meaning of 29 U.S.C. § 207(a)(1).

**EMPLOYEE STATUS**

21.

JRK employed Emelike as a Leasing Consultant from May 13, 2020 through September 15, 2020.

22.

From May 13, 2020 through September 15, 2020, Emelike was an "employee" within the meaning of 29 U.S.C. § 203(e)(1).

23.

From May 13, 2020 through September 15, 2020, JRK was Emelike's "employer" within the meaning of 29 U.S.C. § 203(d).

24.

JRK employed Barker as a Leasing Manager from throughout the Relevant Time Period.

25.

Throughout the Relevant Time Period, Barker was an "employee" within the meaning of 29 U.S.C. § 203(e)(1).

26.

Throughout the Relevant Time Period, JRK was Barker's "employer" within the meaning of 29 U.S.C. § 203(d).

**EMELIKE'S NON-EXEMPT STATUS**

27.

While employed by JRK, Emelike was not exempt from the maximum hour requirements of the FLSA by reason of any FLSA overtime exemption.

28.

JRK never employed Emelike in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

29.

Emelike never held a specialized degree or certification that she utilized to perform her duties on behalf of Defendant.

30.

JRK never employed Emelike in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

31.

JRK never employed Emelike in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

32.

JRK never employed Emelike in the capacity of an "outside salesman" so as to be exempt from the maximum hour requirements of 29 USC § 213 (a).

33.

Emelike did not have a primary duty that involved the exercise independent judgment and discretion in the formation of significant business decisions on behalf of JRK or its customers.

34.

From May 13, 2020 through September 15, 2020, JRK did not pay commissions to Emelike that exceeded one half of her total compensation in any pay period.

35.

JRK knew or should have known that under the FLSA Emelike was entitled to an overtime premium for work she performed in excess of forty hours in a work week.

**BARKER'S NON-EXEMPT STATUS**

36.

Barker was not exempt from the maximum hour requirements of the FLSA by reason of any exemption during any period of her employment with Defendant.

37.

JRK never employed Barker in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

38.

Barker never held a specialized degree or certification that she utilized to perform her duties on behalf of Defendant.

39.

JRK never employed Barker in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

40.

JRK never employed Barker in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

41.

JRK never employed Barker in the capacity of an "outside salesman" so as to be exempt from the maximum hour requirements of 29 USC § 213 (a).

42.

Barker did not have a primary duty that involved the exercise independent judgment and discretion in the formation of significant business decisions on behalf of JRK or its customers.

43.

Throughout the Relevant Time Period, JRK did not pay commissions to Barker that exceeded one half of her total compensation in any pay period.

44.

JRK knew or should have known that under the FLSA Barker was entitled to an overtime premium for work she performed in excess of forty hours in a work week.

**FLSA OVERTIME VIOLATION - EMELIKE**

45.

From May 13, 2020 through September 15, 2020, JRK compensated Emelike through the payment of wages equivalent to $17.00 per hour, plus commissions.

46.

Such commissions were based on number of "move-ins" per month that occurred pursuant to leases that Emelike secured.

47.

From May 13, 2020 through September 15, 2020, JRK also promised to pay Emelike commissions for "renewals" she secured.

48.

From May 13, 2020 through September 15, 2020, JRK assigned manager Keyanna Kenny ("Kenny") to serve as Emelike's immediate supervisor.

49.

The number of hours Emelike worked varied from week to week depending on JRK's schedule.

50.

From May 13, 2020 through September 15, 2020, JRK required that Emelike record her work time by clocking in and out via a time-keeping program.

51.

From May 13, 2020 through September 15, 2020, Kenny frequently required that Emelike work off-the-clock. *i.e.,* that she make a keyboard entry on a JRK desk top computer utilizing a time-keeping program signifying that she had ended her work shift but continue to perform work for JRK.

52.

Kenny required that Emelike work off-the-clock in this manner in order to avoid paying her the overtime premium required by the FLSA.

53.

From May 13, 2020 through September 15, 2020, JRK deducted a one-hour lunch break from Emelike's working hours for each day regardless of whether or not Emelike was actually free from duty for such lunch hour.

54.

From May 13, 2020 through September 15, 2020, Emelike frequently did not receive a period of thirty minutes or more in order to take a lunch.

55.

From May 13, 2020 through September 15, 2020, Emelike worked 45-50 hours during most work weeks.

## 56.

From May 13, 2020 through September 15, 2020, Emelike regularly worked in excess of 40 hours during most, if not all, work weeks.

## 57.

From May 13, 2020 through September 15, 2020, JRK was aware of the actual hours that Emelike worked.

## 58.

From May 13, 2020 through September 15, 2020, JRK failed to compensate Emelike for work she performed in excess of forty hours in any work week.

## 59.

From May 13, 2020 through September 15, 2020, Defendant compensated Emelike for no more than 80 hours for each two week pay period (*i.e.* 40 hours per work week) regardless of the number of hours she actually worked.

## 60.

From May 13, 2020 through September 15, 2020, JRK failed to compensate Emelike at one and one half times her regular rate for work she performed in excess of forty hours in any work week.

## 61.

From May 13, 2020 through September 15, 2020, JRK willfully failed to compensate Emelike at one and one half times her regular rate for work she performed in excess of forty hours in any work week.

## BREACH OF CONTRACT CLAIM - EMELIKE

62.

From May 13, 2020 through September 15, 2020, JRK never advised Emelike as to how the total amounts for each commission she received or should have received were calculated.

63.

From May 13, 2020 through September 15, 2020, JRK never provided Emelike with any documents that reflected the amounts upon which the commissions she received or should have received were calculated.

64.

From May 13, 2020 through September 15, 2020, the amounts JRK Residential paid or should have paid Emelike for commissions ranged in amounts between $25.00 and $200.00.

65.

At all times during the Relevant Time Period, JRK Residential paid Emelike for earned commissions in amounts ranging from $80.00 to $1,500.00 per month.

66.

At all times during the Relevant Time Period, the amounts that JRK Residential paid Emelike for earned commissions did not amount to more than half of her income.

67.

From May 13, 2020 through September 15, 2020, JRK failed to pay Emelike commissions for all of the "move-ins" per month that occurred pursuant to leases that Emelike secured.

68.

From May 13, 2020 through September 15, 2020, JRK failed to pay Emelike commissions for all of the "renewals" she secured each month.

69.

From May 13, 2020 through September 15, 2020, JRK failed to pay Emelike for all of the commissions she earned.

70.

From May 13, 2020 through September 15, 2020, JRK failed to pay Emelike commissions that she earned totaling approximately $3,500.00.

**FLSA OVERTIME VIOLATION - BARKER**

71.

Throughout the Relevant Time Period, JRK compensated Barker through the payment of wages equivalent to $20.00 per hour plus commissions.

72.

Such commissions were based on number of "move-ins" per month that occurred pursuant to leases that Barker secured.

73.

JRK also paid Barker commissions for "renewals" she secured each month.

13

74.

Throughout the Relevant Time Period, JRK assigned Kenny to serve as Barker's immediate supervisor.

75.

The number of hours Barker worked varied from week to week depending on JRK's schedule.

76.

Throughout the Relevant Time Period, JRK required that Barker record her work time by clocking in and out via a time-keeping program.

77.

Throughout the Relevant Time Period, Kenny frequently required that Barker work off-the-clock. *i.e.,* that she make a keyboard entry on a JRK desk top computer utilizing a time-keeping program signifying that she had ended her work shift but continue to perform work for JRK.

78.

JRK required that Barker work off-the-clock in this manner in order to avoid paying her the overtime premium required by the FLSA.

79.

Throughout the Relevant Time Period, JRK deducted a one-hour lunch break from Barker's working hours for each day regardless of whether or not Emelike was actually free from duty for such lunch hour.

80.

Throughout the period from March 2020 through August 2020, Barker frequently did not receive a period of thirty minutes or more in order to take a lunch.

81.

Throughout the period from March 2020 through August 2020, Barker regularly worked 45-60 hours during most work weeks.

82.

Throughout the Relevant Time Period, Barker regularly worked in excess of 40 hours during most, if not all, work weeks.

83.

Throughout the Relevant Time Period, JRK was aware of the actual hours that Barker worked.

84.

Throughout the Relevant Time Period, JRK failed to compensate Barker for work she performed in excess of forty hours in any work week.

85.

Throughout the Relevant Time Period, Defendant compensated Barker for no more than 80 hours for each two week pay period (*i.e.* 40 hours per work week) regardless of the number of hours she actually worked.

86.

Throughout the Relevant Time Period, JRK failed to compensate Barker at one and one half times her regular rate for work she performed in excess of forty hours in any work week.

87.

Throughout the Relevant Time Period, JRK willfully failed to compensate Barker at one and one half times her regular rate for work she performed in excess of forty hours in any work week.

**COUNT I — FAILURE TO PAY OVERTIME - EMELIKE**

88.

The allegations in all previous paragraphs above are incorporated by reference as if fully set out in this paragraph.

89.

From May 13, 2020 through September 15, 2020, Emelike was an employee covered by the FLSA's maximum hour provisions set forth in 29 U.S.C. § 207(a).

90.

From May 13, 2020 through September 15, 2020, Emelike regularly worked in excess of 40 hours during each work week.

91.

From May 13, 2020 through September 15, 2020, JRK failed to compensate Emelike at one-and-one-half times her regular rate for work performed in excess of 40 hours in each work week.

92.

From May 13, 2020 through September 15, 2020, JRK willfully failed to compensate Emelike at one-and-one-half times her regular hourly rate for work in excess of 40 hours in each work week.

93.

As a result of the underpayment of overtime compensation as alleged above, JRK is liable to Emelike for payment of her due and unpaid overtime compensation in an amount to be determined at trial.

94.

As a result of the willful underpayment of overtime compensation as alleged above, Emelike is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

95.

As a result of the underpayment of overtime compensation as alleged above, Emelike is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II — FAILURE TO PAY OVERTIME - BARKER

96.

The allegations in all previous paragraphs above are incorporated by reference as if fully set out in this paragraph.

97.

Throughout the Relevant Time Period, Barker was an employee covered by the FLSA's maximum hour provisions set forth in 29 U.S.C. § 207(a).

98.

Throughout the Relevant Time Period, Barker regularly worked in excess of 40 hours during each work week.

99.

Throughout the Relevant Time Period, JRK failed to compensate Barker at one-and-one-half times her regular rate for work performed in excess of 40 hours in each work week.

100.

Throughout the Relevant Time Period, JRK willfully failed to compensate Barker at one-and-one-half times her regular hourly rate for work in excess of 40 hours in each work week.

101.

As a result of the underpayment of overtime compensation as alleged above, JRK is liable to Barker for payment of her due and unpaid overtime compensation in an amount to be determined at trial.

102.

As a result of the willful underpayment of overtime compensation as alleged above, Barker is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

103.

As a result of the underpayment of overtime compensation as alleged above, Barker is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT III - BREACH OF CONTRACT - EMELIKE

### 104.

The allegations in all previous paragraphs are incorporated by reference as if fully set herein.

### 105.

Emelike and JRK are parties to a contract of employment (hereafter "the Contract") that was effective from on or about May 13, 2020 through September 15, 2020.

### 106.

The Contract provided that JRK would compensate Emelike at an hourly rate plus commission for the work Emelike performed for the benefit of JRK.

### 107.

JRK failed to pay Emelike all the commission due her pursuant to the Contract.

### 108.

JRK's failure to pay Emelike for all commissions she earned constitutes a material breach of the Contract.

### 109.

As the direct and foreseeable result of this breach, Emelike has sustained and continues to sustain damages in an amount of approximately $3,500.00.

## COUNT IV – QUANTUM MERUIT - EMELIKE

### 110.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

### 111.

From on or about May 13, 2020 through September 15, 2020, Emelike served as a Leasing Consultant for JRK.

### 112.

Emelike's service as a leasing consultant for JRK as described above was valuable to JRK.

### 113.

JRK requested Emelike's service as Leasing Consultant.

### 114.

JRK knowingly accepted Emelike's service as a Leasing Consultant.

### 115.

The receipt of Emelike's services as a Leasing Consultant for JRK without compensation in the form of commissions earned would be unjust.

### 116.

Emelike expected to be compensated in the form of commissions earned at the time she provided her services as a Leasing Consultant.

117.

Emelike is entitled to a recover from JRK the reasonable value of the services he provided as a leasing consultant for JRK during his last week of employment, in an amount to be determined at trial.

## COUNT V - PROMISSORY ESTOPPEL - EMELIKE

118.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

119.

On May 13, 2020, JRK promised to pay Emelike commissions in addition to her hourly rate in return for Emelike's service as a leasing consultant for them.

120.

JRK should have reasonably expected that Emelike would induce action in reliance of said promise, i.e., serve as a leasing consultant for JRK Residential.

121.

JRK Residential's promise induced Emelike to act in reliance thereof, i.e., to serve as a leasing consultant for it, to her detriment.

122.

Emelike's service as a leasing consultant for JRK conferred a benefit on it.

123.

JRK failed to pay Emelike for all commissions she earned in accordance with their promise.

124.

Emelike relied on JRK's promise.

125.

Emelike's reliance on JRK's promise was reasonable.

126.

Injustice can only be avoided by enforcement of JRK's promise.

127.

Emelike is entitled to a recover from JRK the reasonable value of due but unpaid commissions she was promised for her work as a leasing consultant for JRK Residential, in an amount of approximately $3,500.00.

WHEREFORE, Plaintiffs respectfully pray:

1.  That they be awarded an amount to be determined at trial against Defendant in unpaid overtime compensation due under the FLSA;

2.  That they be awarded additional like amounts against Defendant, in liquidated damages;

3.  That Plaintiff Emelike be awarded an amount as determined at trial against Defendant as damages as set forth in Counts II, III and IV of this Complaint;

4.   That they be awarded their costs of litigation, including their reasonable attorneys' fees against Defendant; and

5.   For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

101 Marietta Street, N.W.
Suite 2650
Atlanta, Georgia 30303
(404) 979-3150
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com
kevin.fitzpatrick@dcbflegal.com

*/s/ Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791
Kevin D. Fitzpatrick, Jr.
Ga. Bar No. 262375

Counsel for Plaintiffs